**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

JANE POWERS HUGGINS,

          Plaintiffs,

    v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

         Defendants.

Action No. 08:07–CV–825—AW

---

## MEMORANDUM OPINION

Plaintiff Jane Powers Huggins, trading as SADISCO of Maryland ("Plaintiff" or "SADISCO"), brings this actions against Defendants Prince George's County, Maryland ("the County") and several Prince George's County officials, claiming a violation of Substantive Due Process pursuant to 42 U.S.C.§1983 (Count I). Currently pending before the Court is Defendant Prince George's County, Maryland's Motion for Summary Judgment. (Doc. No. 255) and Plaintiff's Motion for Objections and Request to Modify the August 24, 2010 Memorandum Opinion and Order on Plaintiff's Motion for Sanction. (Doc. No. 269).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-moving. Plaintiff (SADISCO) is the owner of property located in Upper Marlboro, Maryland, which Plaintiff used as an automobile wholesaling facility.

On December 20, 2001, SADISCO avers that they applied to the County for a use and occupancy permit for the "wholesaling or distribution of materials/products not used or produced on the premises." (Doc. No. 1, at 6) Additionally, they allege that the County lawfully approved

the use and occupancy permit on Marcy 12, 2002 and the permit was lawfully issued on March 18, 2002. *Id.* Plaintiffs contend that "[t]he permit listed the approved use as storage, yard, used car sales, wholesale/retail." *Id.* Additionally, Plaintiffs assert that they "applied for and lawfully obtained a 'Use and Occupancy—Building permit for use of a trailer to house the office for the facility" on March 25, 2002. *Id.* On March 15, 2002, according to Plaintiff, SADISCO obtained a permit for a six-foot fence on the property. *Id.* at 7. Plaintiffs state that they "openly conducted a used automobile wholesaling facility on the Property to such an extent that the neighborhood was advised . . . that the Property was being used for an automobile wholesaling facility in accordance with the lawfully issued Permits." *Id.*

On October 16, 2002, the Department of Environmental Resources ("DER") issued a Notice of Violation and Civil Citation, alleging that Plaintiff was conducting grading and other work without proper permits. Later on October 30, 2002, the County issued another Notice of Violation, stating that Plaintiff's use of the trailer on its property violated certain zoning ordinances. The Notice also ordered Plaintiff to apply for additional construction, grading, and use permits.

On September 3, 2003, Plaintiff entered into two consent orders with the County. The first consent order directed Plaintiffs to obtain a grading permit and approved erosion and sediment control plan and to perform various work at their site within sixty (60) days. The second consent order directed Plaintiffs to vacate the premises within ninety (90) days unless Plaintiff obtained a valid use and occupancy permit. Plaintiff alleges that on September 3, 2003, her attorney, Lawrence Taub, sent a letter to Ann Magner, one of the County Attorneys. This letter allegedly recorded a prior verbal agreement that the two had made concerning zoning and grading cases which were the subject of the consent orders. The letter stated,

On behalf of my client, I have discussed the timing issue with both you and DER's staff (Inspectors Holzberger and DeHan) and I have been told by all that even though the consent order is limited to these specific time frames, if the required permits and other actions have not been fully accomplished by the end of those time periods, but the County staff sees that my client has been diligently pursuing these applications and that the failure to obtain these permits is not as a result of any inaction by my client, the County staff will continue to work with my client, will not take actions to cause it to cease operations upon this property, and will allow my client to continue to operate upon its property while continuing to diligently pursue issuance of the required permits. My client's execution of these consent orders is thus premised upon its understanding and acceptance of this representation by you and the County DER staff.

(Doc. 1, at 12).

Plaintiff alleges that Ms. Magner never contacted Mr. Taub, the Plaintiff's attorney to contest the terms of the agreement. Accordingly, Plaintiff avers that when she entered into the consent orders, Ms. Magner understood "that SADISCO's execution of the consent orders was based on her oral agreement with Mr. Taub that compliance efforts could extend beyond the stated periods." (Doc. No. 193).

By April 1, 2004, Plaintiff alleges that she had taken all of the actions required in the Notices of Violation with the exception of obtaining a grading permit, which it was attempting to do. On or about April 28, 2004, the County barred access to the property pursuant to the authority of the second consent order, which stated:

If Defendant(s) do not take the corrective actions order[ed] herein, then pursuant to Maryland Rule 3-648 plaintiff, Prince George's County, Maryland, and all of its authorized agents and representatives . . . shall have the authority to take all action necessary to enter onto property of the 6700 Block of Foxley Road, Upper Marlboro, Maryland, to execute this Order, and to remove the occupants and close down the operation of the business/use on the premises by posting and securing the property, and permit no one to enter onto the property for the purpose of conducting business until a valid use and occupancy permit is obtained . . . .

On March 30, 2007, Plaintiff filed suit in this Court, claiming a violation of its substantive due process rights, breach of contract, tortuous interference with economic relations,

and negligent misrepresentation. Plaintiff alleges that Defendants began carrying out a secret plan to deprive Plaintiff of the use of her property. Specifically, Plaintiff argues that Defendant Beckert of the Department of Public Works and Transportation advised others in the County government to place a hold on the issuance of any permits for Plaintiff's property because of a hazardous waste issue that was a significant liability concern for the County. Plaintiff argues that Defendants actively concealed this liability concern from Plaintiff. Moreover, Plaintiff claims that it continued to diligently pursue the permit applications and engaged in the necessary work to seek those permits and regularly kept Defendants informed about its progress. According to Plaintiff, Defendants ultimately padlocked Plaintiff's property, thus causing the demise of the business and other harm.

On February 9, 2009, Defendants Thomas F. Matzen, Anne E. Williams, Prince George's County, Maryland, Cynthia Berry, Erv Beckert, and Jeffrey Dehan filed a Motion for Summary Judgment (Doc. No. 184), among other motions. On July 24, 2009, the Court held a hearing on these motions. Ruling on the Summary Judgment Motion, the Court granted judgment for the Defendants with respect to Count III of the Complaint for Breach of Contract and denied the motion with respect to Count I of the Complaint for a Violation of Substantive Due Process. (Doc. No. 224). During the July 24 hearing, the Court made no findings concerning whether a constitutional violation in fact had occurred, but found that the individual defendants were entitled to qualified immunity for any alleged substantive due process violations. *Id.*

At the conclusion of the July 24 hearing, counsel for Plaintiff inquired about discovery on the Plaintiff's *Monell* claim against Prince George's County. The Court reviewed the docket with respect to its previous findings regarding Plaintiff's claim. In its earlier opinion dated February 5, 2008, (Paper No. 30) the Court found that Plaintiff alleged a claim under *Monell* but stayed

discovery on the issue.  On May 3, 2010, Defendants filed the instant Motion for Summary Judgment regarding the remaining substantive due process claim under 42 U.S.C. §1983.  A hearing was held on this Motion on October 19, 2010.   (Doc. No. 276).   Plaintiff has also filed a Request to Modify the August 24, 2010 Order on Plaintiff's Motion for Sanctions after their request for sanctions related to spoliation of evidence was denied by the Magistrate Court adjudicating discovery in this matter. (Doc. No. 269).

This memorandum opinion will address Defendant's  Motion for Summary Judgment (Doc. No. 255) and Plaintiff's Motion Objecting and Requesting to Modify the August 24, 2010 Memorandum Opinion and Order on Plaintiff's Motion for Sanctions (Doc. No. 269) *seriatim.*

## II. STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary

basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. ANALYSIS

#### A.   Violation of Substantive Due Process under §42 U.S.C. 1983

Plaintiff alleges that the Prince George's County violated her substantive due process rights in violation of 42 U.S.C. 1983.   "Municipalities are liable under 42 U.S.C.1983 for actions of its employees. *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694 (1978). A municipality cannot, however, be held liable under 45 U.S.C. § 1983 under respondeat superior or vicarious liability. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). Instead, the plaintiff must demonstrate that the municipality itself caused the constitutional violation at issue. *Id.* A municipality is only liable under section 1983 if it deprives an individual of civil rights through an official policy or custom. *Monell,* 436 U.S. at 694; *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir.1999). The plaintiff must demonstrate a direct causal link between such policy or custom and the alleged constitutional deprivation. *Harris,* 489 U.S. at 385. The plaintiff must show 'that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.' *Carter,* 164 F.3d at 218. The plaintiff can show a policy 'if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage.' *Id.*" *McCall v. City of Portsmouth*, Nos. 2:07cv339, 2:07cv340, 2007 WL 3025359, at *4 (E.D.Va., Oct. 12, 2007).   To adequately support a *Monell* claim, the Plaintiff must first show that the municipality has committed a constitutional violation.

#### 1.   Underlying constitutional violation for 1983: Substantive Due Process

To establish liability under §1983, the Plaintiff must demonstrate that the Defendant has

proximately caused a constitutional violation that has injured the Plaintiff. *Harris,* 489 U.S. 378, 385. When there is no "underlying constitutional violation[ ] by any individual, there can be no municipal liability." *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir.1999); see also *City of Los Angeles v. Heller*, 475 U.S. 796 (1986); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 420-21 (4th Cir. 1996). Plaintiffs aver that Defendants deprived their substantive due process rights by "intentionally depriv[ing] SADISCO of its property interest by deciding in advance not to approve permit applications, voiding permits that had been rightfully obtained, refusing to consider or approve permit applications, imposing unduly burdensome and unnecessary requirements on SADISCO, and closing the property by force." (Doc. No. 1, pg. 18). Additionally, Plaintiffs allege that the Defendants performed these acts for an "improper and proprietary purpose: to reduce the likelihood that the County would incur liability for an environmental clean-up of the County's own property in the Foxley Road area." *Id.* Plaintiffs contend that these facts support a claim that her substantive due process rights have been deprived, in violation of the Fourteenth Amendment.

To establish a claim of substantive due process a plaintiff must show that:

1. She had property or a property interest;

2. The State deprived her of this property or property interest; and

3. The State's action falls so far beyond the out limits of legitimate governmental action that no process could cure the deficiency.

*Taylor v. City of Columbia*, No. 3:07-983-JFA-JRM, 2010 WL 296901, at * (D.S.C. Jan. 20, 2010)

### i. Property Interest

To prevail on a substantive due process claim, the plaintiff must show that he has a property interest in the matter. Under Maryland law, a property owner can obtain a property

right in a land use permits. "In Maryland it is established that in order to obtain a 'vested right' in the existing zoning use which will be constitutionally protected against a subsequent change in the zoning ordinance prohibiting or limiting that use, the owner must (1) obtain a permit or occupancy certificate where required by the applicable ordinance and (2) must proceed under that permit or certificate to exercise it on the land involved so that the neighborhood may be advised that the land is being devoted to that use." *Richmond Corp. v. Board of County Com'rs for Prince George's County*, 254 Md. 244, 255-56.(Md. 1969). The parties are in dispute over the first prong of this test—whether the Plaintiff obtained a valid use and occupancy permit for her property.

### 1. Property Interest by Obtaining a Valid Use and Occupancy Permit

Defendants allege that Plaintiffs never received a valid use and occupancy permit, thus failing to satisfy the first prong of the *Richmond* test. (Doc. No. 183, p. 33). According to Defendants, Plaintiff fallaciously assumes that she obtained a validly issued use and occupancy permit. Defendants allege,

> On March 18, 2002, the Plaintiff applied for a use and occupancy permit as well as a temporary construction trailer permit. On that date, her application was accepted, and she was issued papers demonstrating this fact. However, the facts also demonstrate that the Plaintiff failed to gain issuance of the permits following review and recommendation by the Planning Board and various County agencies . . . .

> *Id.*

However, Plaintiff contends that she was issued a valid permit, and this permit was arbitrarily invalidated by the Defendant. First, Plaintiff alleges that in their answer, Defendant admitted that a use and occupancy permit was validly issued to the Plaintiff on March 18, 2002. (Doc. No. 193, at 24).[1] Plaintiffs allege that the Defendant's answer constitutes a judicial

---

[1] In paragraph 21 of Plaintiff's Complaint, Plaintiff states, On December 20, 2001, SADISCO applied to the County for a use and occupancy permit for the "wholesaling or distribution of materials/products not used or produced on the premises." The County

admission and "withdraws from contention the fact that SADISCO obtained a use and occupancy permit for the Property. . . . As a result, it is undisputed that SADISCO *did* obtain the necessary use and occupancy permit for the Property." *Id.*

Throughout this case, Defendants have averred that no use and occupancy permit was ever lawfully issued to Plaintiffs. The Court will not rely on an innocent mistake in the pleadings to support a contrary contention. Reviewing the record of this case in its totality, it is apparent to the Court that the admission made by Defendants was inadvertently made. Therefore, the Court will not bind Defendants to this admission.

Plaintiff offers evidence that she lawfully obtained a use and occupancy permit. To support her claim that she obtained a use and occupancy permit, Plaintiff avers that she obtained a permit which "bears permit number 36155-2001, was signed by County official Sarah Bouldin-Carr and bears an 'issuance date' of March 18, 2002. (Doc. No. 193, at 34, Ex. 4)." Plaintiff has offered this permit as an exhibit. Additionally, Plaintiffs states that the County Attorney "confirmed that these aspects of a permit document show that a permit has been issued. Ms. Magner explained that when 'the permit actually gets issued, there will be a document that contains that number, but also contains an issuance date.'" (Doc. No. 193, at 25).

Defendants respond to this allegation by stating that during the deposition of Ms. Magner, "[she] was asked specifically about the use and occupancy permit application in this action, and confirmed that the permit had never been issued. (Doc. No. 201, at 10). Contrarily, Plaintiff alleges that the County's online status tracking system showed that the permit had been issued. *Id.* at 25.

---

lawfully approved the use and occupancy permit on March 12, 2002, and that permit was lawfully issued on March 18, 2002. The permit listed the approved use as "storage yard, used car sales, wholesale/retail." In their answer, filed on March 8, 2008, the County and each of the individual Defendants admitted paragraph 21 of the complaint in its entirety: "Defendants Admit the allegations as stated in [Paragraph] 21 of Plaintiff's Complaint[.]" (Answer ¶ 21.)

Furthermore, Defendants contest Plaintiff's allegations that she obtained a valid use and occupancy permit, claiming that Plaintiffs never obtained final approval of their use and occupancy permit applications.  Defendant avers that on March 25, 2002, the Maryland National Capitol Park and Planning Commission (M-NCPPC) "issued its approval of the Plaintiff's use and occupancy permit application with comments, including that any autos on the property not be in a 'state of ruin.'" (Doc, No. 184, at 13; Def. Ex. 26).   When the use and occupancy application was provided, DER also issued blank forms, the first being a blank permit marked with a term "NOTICE! THIS IS NOT YOUR USE AND OCCUPANCY PERMIT", as well as a blank occupancy permit, both forms awaiting final inspection by county agencies before they could be finally issued for Plaintiff's property." (Doc. No. 184 at 13).   Defendants contend that although Plaintiff's _application_ for a use and occupancy permit was accepted, she "failed to gain issuance of the permits following review and recommendation by the Planning Board and various County agencies."  _Id._ at 33.

Defendants offer the deposition testimony of Thomas Matzen, the Associate Director of the Community Standards of DER to explain the process of validly obtaining a use and occupancy permit.  "A use and occupancy permit is a document that's issued after inspections are completed and compliance is achieved to commemorate the use of a property and located thereon for a specific one." (Doc. No. 184 at 34).   Matzen goes on to state that if a use and occupancy permit were in fact issued, an inspection would be required.  _Id._  The inspection would entail

> [Taking] the site plan and [verifying] that the information submitted was correct, and that the site plan matched the information that was submitted and approved for the issuance of that permit . . . if [sic] the inspection was successful and all criteria had been met, then a use and occupancy permit would be issued. . . . . [The Zoning Enforcement Group] would issue the [Use and Occupancy Permit] which would involve signing the issued copy,

dating it, putting their ID number on it, and they would file that copy and enter information into the computer which would close the case.
*Id.*
Defendants allege that no inspection was ever performed which would validate the use and occupancy permits at issue, thus demonstrating that the Plaintiffs never obtained an occupancy permit. *Id.* As a result, Defendants allege that Plaintiff has not gained a vested right in the permit, and therefore, no property interest in the permit exists.

During the hearing on the instant Motion, Plaintiffs indicated that "[i]t's required that a party . . . obtain a grading permit as a prerequisite to getting a use and occupancy permit." (Doc. No. 277, at 21). When the Court inquired into whether Plaintiff had made any effort to seek a grading permit, Plaintiffs responded that they "did not have the opportunity to file for one because the prerequisite was still being satisfied, namely [the] stormwater pond approval . . . . [and] the stormwater approval was a prerequisite to getting a grading permit." *Id.* at 22.

Having reviewed the record in this case, the Court finds that Plaintiffs have failed to lawfully obtain a valid use and occupancy permit. Defendants have demonstrated that Plaintiffs must undergo a specific process to obtain such a permit. Namely, Plaintiffs must undergo an inspection of the property by the proper officials. After this inspection is performed, the inspectors must sign the bottom of the use and occupancy permit to give the permit legal effect. Plaintiff has not complied with this final step to obtain a use and occupancy permit, and therefore, they have no property interest in the permits at issue under the vested rights theory of property interests.

## 2. Property Interest by Entering into Agreement with County

In addition to having a property interest in the permits themselves, Plaintiffs assert that they also have a property interest in "Defendants' express agreement not to cause SADISCO to cease operations on the Property. (Doc. No. 193, at 37). According to Plaintiffs, the County

"expressly agreed not to cause SADISCO to cease operations on the property if SADISCO diligently pursued compliance with the County's demands." *Id.* Plaintiffs purport that "a person can obtain a protectable property interest in a right where there are mutually explicit understandings" that give rise to that right. (Doc. No. 193, p. 37) (citing *Perry v. Sinderman*, 408 U.S. 593, 601 (1972)).

However, Maryland courts have held that a state law contract is not a fundamental right justifying substantive due process protections. In *Samuels v. Tshechtlin*, 135 Md. App. 483, 518, the Plaintiff alleged that he had a property interest in his employment contract and that the contract could not be terminated without substantive due process. In *Samuels*, the Court refused to recognize a property right in a state-law contract. *Id.* at 534. The Court stated,

> [T]he interest asserted by respondent . . . is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution . . . . For these reasons, briefly summarized, I do not think the fact that [the state] may have labeled this interest 'property' entitles it to join those other, far more important interests that have heretofore been afforded the protection of substantive due process." *Id.* at 534-35.

As Maryland fails to recognize a property interest in state law contracts, Plaintiffs have failed to demonstrate a property interest in the agreement at issue in this case.

Having failed to demonstrate a property interest in this matter, the Court finds that there is no genuine dispute of material fact as to whether Plaintiff's substantive due process rights were violated. The Court finds no violation of Plaintiff's substantive due process rights, and hence no underlying constitutional violation. As such, Plaintiff's *Monell* claim fails. "Plaintiffs cannot sustain a claim against the County under *Monell* where the Court finds no 'underlying constitutional violation' by Defendant[s] . . . ." *Walker v. Prince George's County, Maryland*, Civ. Act. No. AW-07-203, 2008 WL 7555247, at *5 (D.Md., Mar. 31, 2008) (citing *Grayson v. Peed,* 195 F.3d 692, 697 (4th Cir.1999); *see also Giancola v. State of West Virginia Dept. of*

*Pub. Safety,* 830 F.2d 547, 550 (4th Cir.1987) ("If the officers' actions were in compliance with constitutional standards, there is no liability on the part of ... the employing entities."); *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir.1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.")).

For the reasons articulated above, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## V.  REQUEST TO MODIFY ORDER ON SANCTIONS

The Court will next address Plaintiff's Objections to and Request to Modify August 24, 2010 Order on Plaintiff's Motion for Sanctions.    Plaintiff ("SADISCO") files this Request to Modify after their request for sanctions related to spoliation of evidence was denied by the Magistrate Court adjudicating discovery in this matter.  The Plaintiff sought emails and a paper file from Alfonso Cornish, Deputy Chief Administrative Officer for Governmental Operations and Environmental Services, Office of the County Executive, Prince George's County, who SADISCO claims was intimately involved in decisions that forced the padlocking and closure of their business.  SADISCO claims that Defendant ("Prince George's County" or "County") had a duty to maintain the documents and destroyed the documents in disregard of that duty causing them prejudice.  Magistrate Judge Connelly applied the test for spoliation and found that the Defendant, Prince George's County, was not forthcoming about the status of the emails but was not guilty of spoliation because there was no duty at the time the emails were destroyed and their relevance was limited at best.  Accordingly he fined the County $2,000 as a reprimand for their time-wasting behavior.

Mr. Cornish's employment with the County had ended on March 17, 2006 before the settlement of a Maryland Public Information Act ("MPIA") suit between SADISCO and the

County (July 13th, 2006) and before the filing of this suit (March 30th, 2007). Pursuant to County policy, after six months his email account was deleted from the archives (on or about Sept. 16th, 2007). SADISCO never sought discovery nor asked for any litigation holds in either the MPIA or present action with regards to Mr. Cornish or his division of the County, the Office of the County Executive. While Cornish was made aware of the actions taken by the County towards SADISCO, the record amply supports that the individuals who made the decisions that led to the padlocking of the property and carried them out had independent authority to do so without Cornish. Below is a table of dates from Judge Connelly's Memorandum Opinion:

| DATE | EVENT |
| --- | --- |
| April 28, 2004 | The County padlocks SADISCO's facility. |
| September 16, 2004 | SADISCO files a MPIA action against the County in the Circuit Court for Prince George's County, Maryland. |
| August 24, 2005 | SADISCO issues Notification to Preserve Electronic Data to the County. |
| March 17, 2006 | Alfonso Cornish's employment with the County ends. |
| April/May 2006 | The County's OITC conducts a search of relevant electronic records regarding MPIA action. |
| July 13, 2006 | SADISCO and the County reach a settlement of the MPIA action & the case is dismissed. Thereafter the County resumes normal document retention/destruction procedures. |
| September 16, 2006 | The elapse of six months after Mr. Cornish's departure as a County employee. His electronic mailbox is deleted from the County's server. |
| March 30, 2007 | SADISCO files the instant lawsuit. |
| March 10, 2008 | SADISCO issues litigation hold for SADISCO-related documents to the County |
| March 10, 2008 | The County's Office of Law directs OITC to preserve SADISCO-related electronic documents. |

(Doc. No. 268, at 31).

## A.  STANDARD OF REVIEW

The standard of review for non-dispositive matters is governed by D. Md. Local R.

301.5(a), delegating authority given to Magistrate Judges under 28 U.S.C. § 636(b).  The rule

states in relevant part, "A District Judge may reconsider, modify, or set aside any portion of the

Magistrate Judge's order found to be clearly erroneous or contrary to law."  *Id*.  More

specifically, "[o]n review of a magistrate judge's decision on a non-dispositive matter, the court

reviews findings of fact for clear error, and conclusions of law *de novo*."  *Int'l Ass'n of

Machinists & Aero. Workers v. Werner-Matsuda*, 390 F.Supp. 2d 479, 485-486 (D. Md. 2005).

*Berman v. Cong Towers* provides additional guidance:

> Under 28 U.S.C. § 636(b)(1)(A), non-dispositive pretrial matters may be referred to a
> magistrate judge for hearing and determination.  A district judge may modify or set aside
> any portion of a magistrate judge's non-dispositive ruling "where it has been shown that
> the magistrate judge's order is clearly erroneous or contrary to law."  *Id*.; *see also*
> Fed.R.Civ.P. 72(a).  Under the clearly erroneous standard, the reviewing court is not to
> ask whether the finding is the best or only conclusion permissible based on the evidence.
> Nor is it to substitute its own conclusions for that of the magistrate judge.  *See Tri-Star
> Airlines, Inc. v. Willis Careen Corp.*, 75 F.Supp.2d 835, 839 (W.D. Tenn. 1999).  Rather,
> the court is only required to determine whether the magistrate judge's findings are
> reasonable and supported by the evidence.  *Id.*  "It is not the functions of objections to
> discovery rulings to allow wholesale relitigation of issues resolved by the magistrate
> judge."  *Buchanon v. Consol. Stores Corp.*, 206 F.R.D. 123 (D. Md. 2002).

*Berman v. Cong. Towers Ltd. P'ship-Section I*, 325 F. Supp. 2d 590, 592 (D. Md. 2004).

## 1.  Analysis

To attain sanctions for spoliation a party must prove:

> (1) The party having control over the evidence had an obligation to preserve it when it
> was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state
> of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims
> or defenses of the party that sought the discovery of the spoliated evidence, to the extent
> that a reasonable fact finder could conclude that the lost evidence would have supported
> the claims or defenses of the party that sought it.

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009).

### i.     Obligation to Preserve

"The duty to preserve material evidence arises not only during litigation but also extends

to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* at 509 (citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)). The court in *Goodman* further cites *Samsung Elecs. Co., Ltd. v.. Rambus, Inc.*, 39 F. Supp 2d 524, 568 (E.D. Va. 2006), to state, "the point at which litigation becomes probable does not necessarily correspond with when a party anticipated or should have reasonably anticipated." *Id.* (The court also states, "[t]he mere existence of a dispute does not necessarily mean that parties should reasonably anticipate litigation or that the duty to preserve arises." *Id.*) Instead in *Goodman* it was a letter openly threatening litigation that put the defendant on notice that litigation was reasonably foreseeable and not earlier contacts centered around the dispute. *Id.* at 511.

The clear weight of Fourth Circuit precedent places the point of the obligation's creation somewhere between knowledge of the dispute and direct, specific threats of litigation. Pursuant to this standard, Judge Connelly found that the clause in the MPIA action settlement agreement (dated July 13, 2006) stating that Plaintiff does not waive the right to file future actions unrelated to the MPIA action, was not sufficient to give the County notice of the pendency of a suit and trigger an obligation to preserve. Therefore, the obligation to preserve began with the filing of the current action on March 30, 2007 – eight months after the settlement and more than a year after Cornish's employment with the County ended (March 17, 2006). Cornish's email account was deleted from the County archives on or about September 16, 2006, pursuant to County policy, six months after the termination of Cornish's employment. Therefore, Cornish's email account was deleted in accordance with standard operating procedure outside of the obligation to preserve.

With regard to the paper file, Judge Connelly made several findings in his order:

First, the County policy concerning retention of physical documents was unclear. Second, Cornish testified that he had a paper file at his deposition. Third, the County's duty to preserve the paper file was triggered on March 30th, 2007, one year after Cornish left employment with the County. Fourth, SADISCO has neither established that the County was in possession of Cornish's file at that date, nor that they lost or destroyed the file. Finally, the County had no duty to preserve the file between July 13th, 2006 and March 29th, 2007.

(Doc. No. 268, at 35).

Finally, while Judge Connelly found that there was no duty to preserve Cornish's documents when they were destroyed, he nonetheless engaged in an analysis of whether Cornish was a key player. In *Goodman*, the court uses case precedent to find that the key player analysis is appropriate once the obligation to preserve arises, holding that a party is "obligated to implement a litigation hold with respect to relevant documents including electronically stored information for the 'key players' involved with the dispute …." 632 F. Supp. 2d 494, 511-12; *See also Thompson v. United States HUD*, 219 F.R.D. 93, 100 (D. Md. 2003); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003). The court further explained, "[i]dentifying a 'key player' in litigation is not dependent on the volume of interaction between an individual and a litigant, but rather is determined by whether an individual is likely to have information relevant to the events that underlie the litigation." *Id*. Judge Connelly found that Cornish was not involved in the earlier padlocking of SADISCO's property, but was involved in the decision to deny the request to immediately reopen the facility and, therefore, a key player in that respect. The Court will give deference to these factual findings made by Judge Connelly.

SADISCO attempts to negate Judge Connelly's findings and legal conclusions by arguing that he has created a suspended duty theory. Specifically Plaintiff states:

[A]fter holding that the County's duty to preserve documents began in 2004, however, the Order holds that this duty temporarily went out of effect between July 2006 and March 2007. The County did not argue this 'suspended duty' theory in its opposition to the sanctions motion. The Order itself raises the 'suspended duty' theory and uses it to

excuse the deletion of Mr. Cornish's e-mails.

(Doc. No. 269, at 20)(internal citations omitted).

SADISCO further reasserts that by bringing the MPIA suit and including a clause in its settlement that reserved the right to sue for other causes, this created an obligation to preserve in the current case. Plaintiff cites to *AGV Sports Group, Inc. v. Protus IP Solutions, Inc.* for the proposition that the duty to preserve does not turn on and off, but rather extends until the conclusion of litigation on a dispute. Civil Action No. RDB 08-3388, 2009 WL 1921152 at *11 (D. Md. Jul. 1, 2009). SADISCO, however, ignores the surrounding language that the obligation to preserve is based on reasonably foreseeable litigation only. The logical result of their stance is that a defendant is required to hold all possibly relevant records to all possible litigation if any litigation could possibly occur – an extreme position that extends foreseeability beyond reasonableness.

### ii.     Culpable State of Mind

Judge Connelly ruled that the County had no culpable state of mind. He found that the email account was destroyed pursuant to standard operating procedure in a routine manner during the gap between the MPIA settlement and institution of this action. Judge Connelly reasoned, "No culpability may be attributed to the County since the duty to preserve had not been triggered when Mr. Cornish's records (electronic and non-electronic) were deleted and/or destroyed." (Doc. No. 268, at 36). Having reviewed the record there is no evidence that the documents were destroyed willfully; the record demonstrates that the documents were destroyed pursuant to neutral policy.

While SADISCO does not directly address the point in their briefing, in the section of their brief concerning relevance, they have alleged that, "the County acted in at least a grossly

negligent manner." (Doc. No. 269, at 17). Supporting their contention they rely on *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*. 685 F. Supp. 2d 456 (S.D.N.Y. 2010). In *Pension Committee* plaintiffs had not purposefully destroyed evidence but failed to timely institute written litigation holds and engaged in careless and indifferent collection efforts after the duty to preserve arose. *See id*. at 473-78. SADISCO's argument fails because it is dependent on the duty to preserve existing at the time the documents were destroyed. *See id*. at 464-65. Judge Connelly determined that the duty to preserve was not present at the time the requested documents were destroyed and this Court confirms that determination.

### iii.     Relevance of the Destroyed Evidence

SADISCO argues that Cornish is a key witness on the policy and custom aspects of its *Monell* claim and therefore his emails are necessarily relevant. Judge Connelly made the factual finding that the evidence does not support SADISCO's assertion that Cornish had a substantial role in the decision to padlock the property nor the decisions leading up to it which are the substantive basis for the claim. (*See* Doc. No. 268, at 36-40). Judge Connelly's extensive factual findings present no clear error to this Court and provide no legal grounds for a finding of relevance in SADISCO's favor.

The County's Department of Environmental Resources ("DER") was responsible for padlocking the property. Mr. Cornish's department, the Office of the County Executive did not have oversight over DER with regard to the padlocking, as established by testimony from the former DER director, Ms. Wilson, who was involved in the decision. (Doc. No. 268, at36). Cornish's job in the Office of the County Executive was to funnel information to the County Executive from, "about 27 different agencies and departments, and some quasi-governmental

departments; departments such as the Department of Public Works and Transportation [and] Department of Environmental Resources." *Id*. at 37. "His job entailed 'coordinat[ing] with the respective department managers, to deal with any problems or situations that they faced on a day-to-day basis; and really, to serve as a liaison between the Office of the County Executive and – – and those departments in terms of the carrying out of policies, procedures that were necessary.'" *Id*. The padlocking of businesses that were not in compliance with County law is a routine procedure that Cornish lacked involvement in. *Id*.

Judge Connelly noted that the email evidence, correspondence between SADISCO's counsel, and Cornish's testimony were all consistent with each other and demonstrated Cornish's involvement was peripheral. *Id*. at 38. Finally, Judge Connelly observed that SADISCO was well aware of Mr. Cornish and his role through Cornish's interaction with their counsel prior to SADISCO's notice to preserve electronic data in 2005 and litigation hold letter in 2008. However, SADISCO never referenced Cornish nor his department in either document. *Id*.

In light of this evidence Judge Connelly determined that, "The loss or destruction of Mr. Cornish's electronic documents, though relevant, is not harmful or prejudicial as SADISCO portrays. The Court finds, considering Mr. Cornish's role as a facilitator and that his participation was on the periphery, the loss or destruction of Mr. Cornish's electronic and non-electronic documents is *de minimis*." *Id*. at 40.

Assuming that an obligation was on the County to preserve the evidence, a prerequisite to the element, the factual findings of Judge Connelly are fatal to the relevance of these documents. SADISCO consistently cites to authority outside of the Fourth Circuit to establish their argument. The only case from a Fourth Circuit jurisdiction that SADISCO cites is *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506 (D. Md. 2005). *Broccoli* is distinct from the current

case.

In *Broccoli*, an employment discrimination case, the defendant had a document destruction policy that destroyed emails after twenty-one days and did not place a "litigation hold" on destruction of documents following multiple complaints from the plaintiff and his wife, alongside testimony that his complaints reached upper management who previously denied knowledge. *See* 229 F.R.D. at 510-12. The evidence that was spoliated was evidence that the plaintiff could prove was directly relevant such as his performance evaluations which individuals admitted to conducting under deposition and which could not be found elsewhere. *See id*. at 511-12. In this instance the court found bad faith and sanctioned the defendant with an adverse instruction finding "'overwhelming' evidence of 'a regular policy at [the defendant company] of 'deep-sixing' nettlesome documents and records.'" *Id*. at 511-512 (internal citations omitted). The case at bar is not analogous. The evidence that was spoliated in *Broccoli* had clear relevance, proven by the party seeking sanctions.

Judge Connelly made the factual determination that the Plaintiff had not presented sufficient indications that Cornish's emails and paper file are directly relevant and the absence of this evidence is prejudicial. Giving deference to Judge Connelly's factual findings, several issues become dispositive in this case. First, Mr. Cornish's role was on the periphery; he has testified to this fact, and that testimony is consistent with discovered documents and correspondence between Cornish and SADISCO's counsel after the padlocking. Secondly, in neither the Order to Preserve Electronic Data (2005) nor the Litigation Hold Letter (2008) did SADISCO identify Cornish or his Department, despite knowledge of his role from direct contact between Cornish and SADISCO's counsel. The evidence overwhelmingly indicates that Cornish had a limited say and that his input was unnecessary for the padlocking and other relevant

actions that occurred to SADISCO.

To attain sanctions for spoliation SADISCO is required to prove:

(1) The party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable fact finder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009).

All of the above listed elements must be proven to merit a finding of spoliation.

SADISCO has failed to prove any of the three. As Judge Connelly properly determined, there

was no duty to preserve documents at the time that Cornish's emails were deleted. Additionally,

SADISCO did not prove culpability because their gross negligence theory cannot stand without a

pre-existing duty to preserve. Finally, Judge Connelly properly determined that while Mr.

Cornish's documents are certainly relevant to some possible inquiries, the damage in their loss is

*de minimis* in light of all available evidence.

Thus, the Court finds that no spoliation has occurred and Plaintiff's Request to Modify

the August 24, 2010 Order on Plaintiff's Motion for Sanctions is **DENIED**.

An order consistent with this Memorandum Opinion will follow.


Date:  <u>November 9, 2010</u>                                    _____/s/_____
                                                                                          Alexander Williams, Jr.
                                                                                          United States District Court